609 So.2d 155 (1992)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Richard Michael PELZ, Jr., Appellee.
Nos. 91-2035, 91-2042.
District Court of Appeal of Florida, Fifth District.
December 4, 1992.
*156 John W. Hedrick, Tallahassee, for appellant.
James Dickson Crock, Daytona Beach, for appellee.
GOSHORN, Chief Judge.
The Department of Health and Rehabilitative Services (HRS) appeals from the trial court's order requiring HRS to take custody of Richard Pelz and to hospitalize him in a secure forensic unit. We reverse.
Richard Pelz was arrested for attempting to rape and murder a female clerk at a 7-11 store. Pelz was charged by information with attempted first degree murder,[1] attempted sexual battery,[2] and kidnapping.[3] The record shows that lengthy medical examinations were conducted to evaluate the competency of Pelz due to his history of mental, emotional, and learning problems. The record further indicates that Pelz had previously committed both an attempted sexual battery and a battery in a manner similar to this case.
Pursuant to a plea agreement, Pelz pled no contest to the three charges. The trial court then sentenced Pelz to a 30 year term of incarceration, but after serving 1 year, the sentence would be suspended and a 29 year term of probation would be imposed. The order of probation required Pelz to enter and successfully complete inpatient residential mental health counseling in a secure hospital called the Healthcare Rehabilitation Center in Austin, Texas. The order further provided that the hospital could not release Pelz without a court order. However, when insurance funds for the hospital ran out, the hospital informed the trial court that the hospital would have to discharge Pelz. In response, the trial court resentenced Pelz to 30 years of incarceration in the Department of Corrections.
Subsequently, the trial court granted Pelz's motion for modification of his sentence. The modified sentence suspended a 30 year term of incarceration, with credit for time already served in jail, and then imposed a 28 year term of probation with the condition that Pelz live in a secure hospital under the supervision of HRS pursuant to chapter 394, Florida Statutes (1991) and to section 916.106(4)(b), Florida Statutes (1991). Under a separate order, the trial court committed Pelz to the custody of HRS and required HRS to hospitalize Pelz in a secure forensic unit. HRS appeals from this separate order, which we reverse for the following reason.
On appeal, HRS argues that the trial court did not have jurisdiction to commit Pelz to a secure forensic unit. HRS contends that subsections (1) and (3) of section 916.105, Florida Statutes (1991), give HRS the authority to determine where to place clients in its custody. Therefore, HRS asserts that the trial court violated the separation of powers doctrine by directing HRS to place Pelz in a secure forensic unit when HRS alone has the authority to place clients committed to HRS under chapter 916 in civil facilities.
Section 916.105(1), Florida Statutes (1991), provides in pertinent part:
It is the intent of the Legislature that the Department of Health and Rehabilitative Services establish, locate, and maintain separate and secure facilities and programs for the treatment of forensic clients who have been found to be mentally retarded or mentally ill defendants, or who have been acquitted of crimes by reason of insanity, and who, while still under the jurisdiction of the committing court, are committed to the department for mental retardation or mental health services under the provisions of this chapter. The separate, secure facilities shall be sufficient to accommodate the number of clients committed under the conditions noted above, except those clients found by the department to be appropriate for treatment in a civil mental health treatment facility. [Emphasis added].
Section 916.105(3), Florida Statutes (1991), provides:

*157 It is the intent of the Legislature that evaluation and treatment of mentally ill and mentally retarded defendants be provided in community inpatient or outpatient settings, in community residential facilities, or in civil, nonforensic facilities, whenever this is a feasible alternative to treatment in a state forensic facility. [Emphasis added].
Section 916.106(4), which defines a forensic client, provides in subsection (c) that HRS determines whether the client is dangerous or liable to escape. Additionally, Florida Administrative Code Rule 10E-20.011(1) provides that commitment orders under chapter 916 shall be sent to HRS for review and determination of an appropriate facility placement for the client. Furthermore, Florida Administrative Code Rule 10E-20.011(4) provides:
Assignment of a forensic client for admission to a civil mental health treatment facility shall be done according to procedures established by the department. Prior to the assignment to a civil facility, that facility must be contacted and approval obtained. A forensic client who is dangerous, is a serious escape risk, or who is severely physically ill shall not be assigned to a civil facility.
As a result, both the legislative intent stated in section 916.105 and the related administrative rules provide support for HRS's argument that HRS, and not the trial court, has the discretion to determine the placement of a forensic client.
We are sympathetic to the concerns of the trial court in the case. The record fully supports the court's conclusion that Pelz is a clear danger to society. There is no doubt that if he is allowed to return to the street without adequate treatment and a resultant cure, Pelz will repeat his violent criminal conduct. There is every reason to believe that Pelz's compulsive behavior will lead him to eventually commit the sexual battery, kidnapping, and murder that he attempted in this case. The trial court was fully justified in believing that the lack of adequate treatment programs and prison overcrowding in the state prison system would likely result in Pelz's early release in his same (or worse) dangerous mental condition. The trial court's order clearly reflects the court's intention to avoid or at least prolong the disastrous result of Pelz's premature return to society. However, the plain language of section 916.105(1) places full discretion in HRS to determine whether to place Pelz in a secure forensic unit. As this case illustrates, it is indeed unfortunate that the legislature has not granted the court the authority necessary to adequately sentence defendants such as Pelz.
We recognize that because of the holding in this case, Pelz will be unable to comply with the conditions of his modified order of probation. Upon remand, the trial court may again modify Pelz's order of probation, or alternatively, the court may revoke that probation and resentence him.
REVERSED.
W. SHARP, and HARRIS, JJ., concur.
NOTES
[1] §§ 782.04, 777.04(1) & (4), Fla. Stat. (1991).
[2] §§ 794.011(3), 777.04, Fla. Stat. (1991).
[3] § 787.01(1)(a), Fla. Stat. (1991).